UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IN RE TIMOTHY PRINGLE,

            Debtor/Appellant.

**DECISION AND ORDER**
<u>05-CV-144S</u>

## I.  INTRODUCTION

Currently before this Court is an appeal from the United States Bankruptcy Court for the Western District of New York.  The Appellant/Debtor contends that the bankruptcy court miscalculated the present value rate of interest for secured claims under his Chapter 13 bankruptcy plan.  Because this Court agrees, it will reverse and remand this case for further proceedings.

## II.  BACKGROUND

On July 9, 2004, Appellant/Debtor (hereinafter "Debtor") filed for bankruptcy in the United States Bankruptcy Court for the Western District of New York pursuant to Chapter 13 of Title 11 of the United States Code.[1]  Debtor proposed a Chapter 13 plan under which he would pay his secured creditors a 5 percent rate of interest per annum.

On September 27, 2004, the bankruptcy court conducted a confirmation hearing, during which the Chapter 13 Trustee ("Trustee") objected to the plan's provision of 5 percent annual interest rate for secured claims.[2]  The Trustee suggested that the bankruptcy court apply a 9 percent rate of interest -- the New York judgment interest rate[3] -- to the creditors' secured claims, in keeping with the Western District's long-standing practice.  See <u>Williams v. Reiber</u>, No. 93-CV-6484L, 1994 WL 16127089, at *9 (W.D.N.Y.

---

[1] The facts of this case are taken from the Statement of Facts set forth in Appellant's Brief (Docket No. 4).  The Appellee stipulates to these facts in his Reply Brief (Docket No. 7).

[2] None of the Debtor's creditors appeared or otherwise objected to the proposed plan.

[3] <u>See</u> N.Y. CIV. PRAC. L. & R. 5004.

May 27, 1994) (affirming "Judge Ninfo's decision adopting the New York judgment rate of interest at 9%" as "clearly proper").  Counsel for the Debtor argued that under <u>Till v. SCS Credit Corp.</u>, 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d 787 (2004), the "appropriate present value interest rate" for all secured claims "should be the prime rate plus between one and three percent."  (<u>Tr.</u>, p. 2).[4]

Immediately after hearing argument, the Honorable Michael J. Kaplan, United States Bankruptcy Judge, modified the Debtor's Chapter 13 plan to provide that all secured claims be paid at an interest rate of 9 percent, except for a single claim which the Debtor and creditor agreed would be paid at a lesser rate of interest,[5] and confirmed the plan without prejudice to the Debtor to seek a reduction of the interest rate paid to secured creditors.  (<u>Tr.</u>, p. 10-12).  Judge Kaplan entered an Order to this effect on October 5, 2004.

On October 8, 2004, Debtor's counsel submitted a letter requesting that the bankruptcy court reduce the interest rate paid to secured creditors to 5.25 percent consistent with <u>Till</u> and <u>In re Valenti</u>, 105 F.3d 55, 63 (2d Cir. 1997).[6]  By letter dated December 21, 2004, Judge Kaplan denied Debtor's request,[7] reasoning that the Bankruptcy Court was not required to apply a "formula rate" of interest to secured claims in response to a debtor's objections.  (<u>Ltr.</u>, p. 1).  The bankruptcy court formalized its denial of Debtor's objection by Order entered on January 18, 2005.

---

[4] The transcript of the confirmation hearing is attached as an exhibit to Appellant's Motion to Vacate the Order of Dismissal (Docket No. 3).  The transcript also appears at Docket No. 41 of the official Bankruptcy Court docket for case number 04-15139.

[5] Debtor and secured creditor Citicapital reached a separate agreement prior to the hearing under which the creditor would receive 5 percent interest. The confirmed bankruptcy plan incorporated the agreement with Citicapital.

[6] This rate represents the formula approach under <u>Till</u>, with a prime rate of 4.25 percent on the date of filing plus the lowest presumptive risk adjustment of 1 percent. <u>See</u> Bankruptcy Court No. 04-15139, Docket No. 24.

[7] <u>See</u> Bankruptcy Court No. 15139, Docket No. 26 and No. 27.

On January 20, 2005, Debtor filed the instant appeal with the United States District Court for the Western District of New York.[8] This Court dismissed the appeal on March 11, 2005, for failure to comply with the Rules of Bankruptcy Procedure. Upon Appellant's Motion, this Court vacated the Order of Dismissal and reopened the case on March 23, 2005.

### III. DISCUSSION

#### A.  Standard of Review

The challenged Order of the bankruptcy court consists solely of a legal determination, which this Court, under its appellate jurisdiction, reviews *de novo*. See Morin v. Frontier Bus. Tech., 288 B.R. 663, 668-69 (W.D.N.Y. 2003).

#### B.  The Cram Down Provision - 11 U.S.C. § 1325(a)(5)(B)(ii)

Section 1325 of the Bankruptcy Code sets forth the circumstances under which a bankruptcy court may confirm a Chapter 13 debtor's reorganization plan. With respect to secured claims, Section 1325(a)(5) provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if-
>
> (5) with respect to each allowed secured claim provided for by the plan-
> (A) the holder of such claim has accepted the plan;
> (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a)(5).

"Under this [statute], the court can confirm a plan if one of three conditions is satisfied with respect to secured creditors . . . the secured creditor accepts the plan[,] the

---

[8] In support of his appeal, Appellant filed a brief, and a transcript of the bankruptcy proceedings held September 27, 2004. The Trustee filed a brief in opposition to the appeal.

debtor surrenders the property securing the claim to the creditor[,] or the debtor invokes the so-called "cram-down" power of section 1325(a)(5)(B)." In re Milham, 141 F.3d 420, 424 (2d Cir. 1998). Under the "cram-down" alternative of 11 U.S.C. § 1325, the debtor retains the collateral and provides the creditor with both a lien securing the claim and a promise to "pay the creditor over the life of the plan . . . amounts [totaling] the present value of the allowed secured claim as of the effective date of the plan." Milham, 141 F.3d at 424 (citing Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 957, 117 S. Ct. 1879, 1882-83, 138 L. Ed. 2d 148 (1997)); see also In re Kidd, 315 F.3d 671, 675 (6th Cir. 2003) (recognizing that the "cram-down" provision, in effect, "requires the creditor to make a new loan in the amount of the value of the collateral rather than repossess it, and the creditor is entitled to interest on his loan").

"In theory, a creditor who receives the 'present value' of its allowed claim is placed in the same economic position that it would have been in had it received the value of its allowed claim on the date the reorganization plan was confirmed." Valenti, 105 F.3d at 63, *abrogated on other grounds by* Assocs. Commercial Corp., 520 U.S. 953.[9] It is axiomatic that a sum certain received today is worth more than the promise to pay that same amount in the future, because money in hand can be immediately reinvested to earn more money. In re Fisher, 29 B.R. 542, 543 (Bankr. D. Kan.1983); Kidd, 315 F.3d at 677. Therefore, to fully compensate a nonconsenting secured creditor for the present value of his property interest, a Chapter 13 plan must provide for periodic payments of the principal amount of the allowed claim and adequate interest to yield present value as of the effective date of the plan. In re Scott, 248 B.R. 786, 789 (Bkrtcy. N.D. Ill. 2000); see also General Motors

---

[9]In Associates Commercial Corp., 520 U.S. at 965 n.5, the Supreme Court disagreed with what it construed as Valenti's "ruleless approach" to determining the value of the collateral based on the "facts and circumstances of individual cases." However, Associates Commercial Corp. did not disturb Valenti's holding regarding how the present day value of a secured claim should be assessed, which is the issue presented in this case.

Acceptance Corp. v. Jones, 999 F.2d 63, 67 (3d Cir. 1993) (reasoning that "[i]n determining present value, we . . . look to the additional value that the secured creditor could be expected to generate in the regular course of its business if the plan provided for an immediate, rather than a deferred, payment of the allowed secured amount").

### C.     Determining the Cram Down Interest Rate

The Bankruptcy Code "provides little guidance as to which of the rates of interest . . . Congress had in mind when it adopted the cram down provision." Till, 541 U.S. at 473; see also In re Palmer, 224 B.R. 681, 683 (Bankr. S.D. Ill. 1998). As a result, the appropriate approach for determining the cram-down rate is "arguably the most debated economic issue in bankruptcy litigation. " Scott, 248 B.R. at 789 (internal citations and quotations omitted). As a general matter, courts agree that a "market rate" of interest should apply in calculating present value, because the interest rate "must be responsive to current economic conditions." In re Bivens, 317 B.R. 755, 762 (Bkrtcy. N.D.Ill. 2004) (quoting In re DeMaggio, 175 B.R. 144, 150 (Bankr. D.N.H. 1994)); see also In re Till, 301 F.3d 583, 589 (7th Cir. 2002), *rev'd on other grounds*, Till, 541 U.S. 465; Matter of Smithwick, 121 F.3d 211, 214 (5th Cir. 1997); Koopmans v. Farm Credit Servs. of Mid-Amer., 102 F.3d 874, 874-75 (7th Cir. 1996); Valenti, 105 F.3d at 63; Gen. Motors Acceptance Corp., 999 F.2d at 66-67; United Carolina Bank v. Hall, 993 F.2d 1126, 1129-30 (4th Cir. 1993); In re Fowler, 903 F.2d 694, 697 (9th Cir. 1990); In re Hardzog, 901 F.2d 858, 859-60 (10th Cir. 1990); United States v. Arnold, 878 F.2d 925, 929-30 (6th Cir. 1989); Scott, 248 B.R. at 790; Palmer, 224 B.R. at 684. However, prior to the Supreme Court's decision in Till v. SCS Credit Corp., courts employed dramatically different approaches to determine the "market rate" and calculate the present value of the creditors' allowed secured claims. Hardzog, 901 F.2d at 859. Such approaches included the coerced loan, the presumptive contract rate, cost of funds, and formula methods.

Under the "coerced loan" method, the secured creditor is essentially forced to extend a new loan to the debtor. Palmer, 224 B.R. at 683. Courts adhering to this approach "define 'market rate' as what the secured creditor would charge other borrowers for loans of similar character, duration, and amount." Id. Put another way, the interest rate is set at a percentage that the creditor could have obtained had it foreclosed on the loan, sold the collateral, and reinvested the proceeds in a similar loan to another debtor in the same geographic area. See In re Swafford, 296 B.R. 66, 68-69 (Bankr. N.D. Ga. 2002) (finding that courts utilizing the coerced loan theory determine the interest rate "in reference to what another lender in the market would charge if it made a similar loan").

Courts which employ the "presumptive contract rate" method apply "the negotiated contract rate between the parties, subject to adjustment based upon the particular facts of the case, to determine the appropriate cramdown interest rate." In re Deep River Warehouse, Inc., No. 04-52749, 2005 WL 2319201, at *9 (Bkrtcy. M.D.N.C. Sept. 22, 2005) (internal citations omitted). The contract rate of interest is employed in circumstances where neither party presents sufficient evidence to determine a market rate. Id. (citing In re Monnier Bros., 755 F.2d 1336, 1339 (8th Cir. 1985)).

Under the "cost of funds" method, the present value is provided to a secured creditor at "an interest rate equivalent to what the creditor would have to pay to borrow money." Scott, 248 B.R. at 790; Palmer, 224 B.R. at 683. "Courts using this approach reason that the best way to place a creditor in the same economic position that it would have been in had the debtor surrendered the collateral immediately is to assume that the creditor would borrow the money representing the value of its allowed claim." Valenti, 105 F.3d at 63. The cost of funds is based on the "assumption that the secured creditor can replace the money tied up in the bankruptcy proceedings and then make new loans to consumers at the then prevailing rates in that market." United Carolina Bank, 993 F.2d at 1130.

Lastly, the "formula" or "risk plus" method begins with a standard measure of "risk-free" lending, such as the United States treasury instrument rate or the national prime rate. Till, 541 U.S. at 478-79; Koopmans, 102 F.3d at 875; Scott, 248 B.R. at 793. The national prime rate, reported daily in the newspaper, "reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default."[10] Till, 541 U.S. at 479. Likewise, the treasury rate is responsive to market conditions and includes all necessary factors except the risk premium. In re Briscoe Enters., 994 F.2d 1160, 1169 (5th Cir. 1993). "Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate" based on relevant considerations such as the "circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." Till, 541 U.S. at 479; see also Scott, 248 B.R. at 791-92; Palmer, 224 B.R. at 683.

In the instant case, the Debtor argues that under the Second Circuit's decision in Valenti and the Supreme Court's decision in Till, the "formula" or "risk plus" is the appropriate measure of the present value of his secured creditor's claims. He thus contends that the Bankruptcy Court erred in applying a 9 percent annual interest rate to these claims. This Court will discuss Valenti and Till in turn.

### D. The Second Circuit's Decision in Valenti

In Valenti, the Second Circuit held that the interest rate imposed to reflect the present value of the secured creditor's claim under 11 U.S.C. § 1325(a)(5)(B)(ii), should have been fixed at the rate on a United States Treasury instrument with a maturity and with

---

[10] In this respect, the national prime rate does not represent an entirely "risk free" measure of lending.

7

a premium to reflect the creditor's risk.  Valenti, 105 F.3d at 64.  In rejecting the "forced loan" method endorsed by the appellant-secured creditor, the Second Circuit reasoned that "[t]he objective of §1325(a)(5)(B)(ii) is to put the creditor in the same economic position that it would have been in had it received the value of its allowed claim immediately.  The purpose is *not* to put the creditor in the same position that it would have been in had it arranged a 'new' loan."  Valenti, 105 F.3d at 63-64 (internal citations omitted). While the court acknowledged that the "cost of funds" approach employed by the bankruptcy court more accurately reflected the present value of the secured creditor's claim, it nonetheless condemned the method as "difficult for bankruptcy courts to apply efficiently and inexpensively."  Valenti, 105 F.3d at 64.

Ultimately, the court determined that a "formula" rate was the best measure of the creditors secured claims.

> Therefore, we hold that the market rate of interest under § 1325(a)(5)(B)(ii) should be fixed at the rate on a United States Treasury instrument with a maturity equivalent to the repayment schedule under the debtor's reorganization plan. This method of calculating interest is preferable to either the "cost of funds" approach or the "forced loan" approach because it is easy to apply, it is objective, and it will lead to uniform results. In addition, the treasury rate is responsive to the market.
> Because the rate on a treasury bond is virtually risk-free, the 1325(a)(5)(B)(ii) interest rate should also include a premium to reflect the risk to the creditor in receiving deferred payments under the reorganization plan.

Valenti, 105 F.3d at 64 (internal citations omitted).  The court endorsed a risk adjustment rate between 1 and 3 percent as "reasonable in this Circuit."  Valenti, 105 F.3d at 64. However, it held that the bankruptcy courts should determine the appropriate risk premium to apply in a particular case.  Valenti, 105 F.3d at 64.

**E.     The Supreme Court's Decision in Till**

In Till v. SCS Credit Corp, a plurality of the Supreme Court considered and rejected the coerced loan, the presumptive contract rate, and the cost of funds methods before adopting the formula or "risk-plus" method as the most appropriate measure of the present value of an allowed secured claim to be paid over time. Till, 541 U.S. at 477. According to the plurality, the coerced loan, presumptive contract rate, and cost of funds methods are "complicated, impose[ ] significant evidentiary costs, and aim[ ] to make each individual creditor whole rather than to ensure [that] the debtor's payments have the required present value." Id.

In contrast, the plurality noted that the formula or "risk-plus" method "entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings." Till, 541 U.S. at 479. Further, the plurality noted, "the resulting 'prime-plus' rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor." Id. For all of these reasons, the plurality found that the formula method "best comports with the purposes of the Bankruptcy Code." Id. at 479-80. In rendering its decision, the Till plurality declined to decide the proper scale for the risk adjustment to reflect a Chapter 13 debtor's greater risk of nonpayment, as the issue was not before the Court. Till, 541 U.S. 480. However, citing to the Second Circuit's decision in Valenti, the plurality acknowledged that "other courts have generally approved adjustments of 1% to 3%." Till, 541 U.S. 480.[11]

To determine the adequate rate of interest on cram down loans in Chapter 13 proceedings using the "risk-plus" method articulated in Till, the bankruptcy court must start

---

[11]In his concurrence, Justice Thomas argued that the "plain meaning" of Section 1325 (a)(5)(B)(ii) does not require a "debtor-specific risk adjustment that would put secured creditors in the same position as if they had made another loan." Id. at 486. As a result, he opined that "[i]n most, if not all, cases, where the plan proposes simply a stream of cash payments, the appropriate risk-free rate should suffice." Id. at 487.

9

with a risk-free standard measure.  Till, 541 U.S. at 479.  Second, the bankruptcy court must consider the nature of the security, the circumstances of the estate, and the duration and feasibility of the reorganization plan in determining the proper size of risk adjustment. Id.  While the determination of the risk premium may require an evidentiary hearing, "[s]ome of this evidence will be included in the debtor's bankruptcy filings [so] the debtor and creditors may not incur significant additional expense."  Till, 541 U.S. at 479.  At all times, the secured creditor bears the evidentiary burden to establish the need for an interest rate higher than the one proposed by the Chapter 13 debtor.  Till, 541 U.S. at 479; see also In re Berksteiner, No. 03-13203, 03-13645, 03-13765, 03-13242, 2004 WL 2201300, at *2 (Bankr. S.D. Ga. Sept. 9, 2004) (citing Till).

Numerous bankruptcy courts across the United States apply the "prime-plus" formula rate articulated in Till to "crammed down" claims.  See, e.g. In re Nowlin, 321 B.R. 678, 685 (Bkrtcy. E.D. Pa. 2005) (upholding the bankruptcy court's determination of an 8 percent interest rate on the basis of Till); In re Books, 344 B.R. 417, 422 (Bkrtcy. E.D.N.C. 2006) (stating that "[t]his district has adopted the prime-plus rate used in Till to calculate interest on a secured claim pursuant to § 1325(a)(5)(B)(ii)"); In re Bufford, 343 B.R. 827, 839 (Bkrtcy. N.D. Tex. 2006) (finding that the Till rate applies to secured claims, even in light of the 2005 amendments to the BAPCPA); In re Pokrzywinski, 311 B.R. 846, 849-50 (Bkrtcy. E.D. Wisc. 2004) (upholding the debtor's objections and applying an interest rate based on the Till formula); In re Harken, Bankruptcy No. 04-02914, 2004 WL 3019467, at *2 (Bkrtcy. N.D. Iowa Nov. 29, 2004) (applying the Till formula over the objections of the creditor); In re Smith, 310 B.R. 631, 634 (D. Kan. 2004) (remanding four Chapter 13 cases for further proceedings before the bankruptcy court consistent with the Supreme Court's directive in Till to apply "prime plus risk"); but see In re Cook, 322 B.R. 336, 343 (Bkrtcy.

N.D. Ohio 2005) (holding that because <u>Till</u> contains no majority legal rationale, the formula rate articulated therein is "confirmable" but not binding).

### E. The Rate Applied in the Instant Case

In confirming the Debtor's Chapter 13 plan in the instant case, the bankruptcy court determined that his secured creditors' claims should be paid at a rate of nine percent, the New York judgment interest rate.  <u>See</u> N.Y. CIV. PRAC. L. & R. 5004.  This Court finds that application of this interest rate, a rate that is wholly unresponsive to the economic conditions of the market, "contradicts the flexible, responsive concept of 'present value' as viewed by the Supreme Court [and] the Second Circuit." <u>In re Dominick</u>, 244 B.R. 51, 55 (Bkrtcy. N.D.N.Y. 2000) (rejecting the 12 percent interest rate -- derived from New York's Real Property Tax Law § 924(a) -- applied to the County's claim for unpaid property taxes, as "unwavering" and "unresponsive").  Further, this Court finds that the bankruptcy court erred in failing to use a formula or risk-plus method to determine the present value of the secured claims in Debtor's Chapter 13 plan, as instructed by <u>Valenti</u> and <u>Till</u>.

Accordingly, the bankruptcy court's January 18, 2005 Order is reversed and this matter is remanded for further proceedings.  Specifically, the bankruptcy court is directed to reassess the secured claims in Debtor's Chapter 13 plan using a formula or risk-plus approach.  To do so, the bankruptcy court must:  (1) select an appropriate standard of risk-free measure, such as the United States Treasury instrument or the national prime rate; (2) determine what that rate was at the time of Debtor's bankruptcy petition, and (3) add a suitable risk premium, such as between one percent and three percent, to reflect the risk to Debtor's secured creditors in receiving deferred payments under the Chapter 13 plan.

### IV. CONCLUSION

The bankruptcy court erred in failing to use a formula or risk-plus method to determine the present value of the secured claims in Debtor's Chapter 13 plan, as

instructed by <u>Valenti</u> and <u>Till</u>.  Accordingly, this matter is reversed and remanded for further proceedings consistent with the foregoing Decision and Order.

### V.  ORDERS

    IT HEREBY IS ORDERED, that the Debtor's Appeal is GRANTED.

    FURTHER, that the bankruptcy court's January 18, 2005 Order is REVERSED.

    FURTHER, that this case is REMANDED to the bankruptcy court for further proceedings consistent with this Decision and Order.

    SO ORDERED.


Dated:  August 29, 2006  
       Buffalo, New York

                                      <u>/s/William M. Skretny</u>  
                                        WILLIAM M. SKRETNY  
                                        United States District Judge